Ramon and Delilah **CRANFORD**, et al., Appellants,

v.

The **CITY OF PASADENA** and **Harris County**, Appellees.

No. 14–94–00938–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 29, 1996.

George E. Pletcher, Houston, for appellants.

Lana S. Shadwick, Houston, Cedric K. Loeb, Houston, Mollie Childs, Pasadena, for appellees.

Before LEE, HUDSON and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

In this wrongful death and survivorship suit, appellants[1] (the "Cranfords") challenge a summary judgment granted in favor of the City of Pasadena (the "City") and Harris County (the "County") on the grounds that (1) the City and County had a duty to correct an allegedly improperly positioned strain pole with which the Cranfords' automobile collided, and (2) fact issues existed (a) whether maintaining the strain pole in an allegedly improper location was a non-discretionary act, (b) whether the allegedly improper location of the strain pole was a premise defect or special defect, and (c) whether the City was negligent in maintaining the street where the collision occurred. We affirm.

On October 24, 1991, an automobile accident occurred at a major intersection in the City of Pasadena in Harris County, Texas. A vehicle driven by Wendy Cranford and occupied by Rebecca and John Corich was struck by another car, causing the Cranford vehicle to strike a strain pole[2] (the "pole") which was positioned 21" from the curb of the road on which the vehicles were traveling. Cranford and her two passengers died as a result of the collision.

The Cranfords, who are family members and estates of the deceased, filed suit against the City and County under common law and the Texas Tort Claims Act (the "Act")[3] claiming that the City and County were negligent in placing the pole too close to the curb and in failing to correct that placement upon receiving notice that it was dangerous.

The City and County jointly moved for summary judgment on the grounds that the Cranfords' suit is barred by governmental immunity because (1) the pole was placed at the intersection prior to January 1, 1970, the effective date of the Act, and not thereafter changed; and (2) the acts of which the Cranfords complain are discretionary acts, not subject to liability under the Act. See TEX. CIV.PRAC. & REM.CODE ANN. §§ 101.056, 101.061 (Vernon 1986). In their response, the Cranfords argued that (1) even though the pole was constructed prior to 1970, the City and County had notice that the pole was defectively constructed and failed to correct it in violation of the Act, and that (2) continued use of the pole as constructed was not a discretionary decision. In July of 1994, the trial court granted a take-nothing summary judgment without stating the basis therefor.

Summary judgment is proper where the movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law on the issues set out in the motion. TEX. R.CIV.P. 166a(c). Summary judgment based on an affirmative defense, such as governmental immunity, is proper only if the movant establishes conclusively all the elements of the defense as a matter of law. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984); *City of Houston v. Bush*, 566 S.W.2d 33, 35 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.) (stating that a plea of governmental immunity is a defensive doctrine and the government has the burden of submitting and proving it). In reviewing a summary judgment, we accept as true all evidence favoring the non-movant, and indulge every

---

1. Appellants include Ramon and Delilah Cranford, Albert Michalik, Independent Administrator of the Estate of John T. Corich, Sonja A. Michalik and William J. Corich.

2. According to testimony in the case, strain poles are utility poles which hold cables from which traffic signals are suspended.

3. *See* TEX.CIV.PRAC. & REM.CODE ANN. 101.001–101.109 (Vernon 1986 & Supp.1996).

reasonable inference and resolve all doubts in the non-movant's favor. *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510 (Tex. 1995). When a summary judgment does not specify the grounds upon which it was granted, it will be affirmed if any of the grounds advanced in the motion is meritorious. *State Farm Fire and Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

We preface our discussion of the specific issues by reviewing relevant background principles concerning governmental immunity.

### Governmental Immunity

■ Under English common law, the King could do no wrong and was immune from liability for tortious conduct. *See Harris County v. Dowlearn*, 489 S.W.2d 140, 143 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.). Under modern Texas law, similar common-law principles generally provide that the state may not be sued in tort without its consent. *See Director of the Dep't of Agric. and Env't v. Printing Industries Ass'n of Texas*, 600 S.W.2d 264, 265 (Tex.1980). Sovereign immunity is enjoyed not only by the state but also by state agencies,[4] counties and cities,[5] statutorily created special purpose districts,[6] and independent school districts.[7]

However, in the early 1900s, state court decisions began moving from absolute immunity for municipalities by drawing distinctions between their governmental and proprietary functions.[8] Under this approach, a city was not liable for the negligent acts of its agents and employees in the performance of governmental functions, but was liable for

unlimited damages for negligent acts in the performance of proprietary functions. *See Turvey v. City of Houston*, 602 S.W.2d 517, 519 (Tex.1980). This proprietary versus governmental distinction did not apply to counties. *Id.*

In 1970, the Legislature further lessened governmental immunity by passing the Act which provides limited circumstances in which the state and its political subdivisions can be sued. *See* TEX.CIV.PRAC. & REM.CODE ANN. 101.001–101.109 (Vernon 1986 & Supp. 1996).

■ As for municipalities, the Act added a second route for imposing liability. *See* Christopher D. Jones, *Texas Municipal Liability: An Examination of the State and Federal Causes of Action*, 40 BAYLOR L.REV. 595, 607–608 (1988). Under the first route, if the municipality engaged in a proprietary act, a plaintiff could sue under common law as before. *Turvey*, 602 S.W.2d at 519. Under the second route, if the municipality engaged in a governmental function, a plaintiff could sue under the Act, subject to limits on damages recoverable. TEX.CIV.PRAC. & REM. CODE ANN. §§ 101.0215(a), 101.023(c) (Vernon Supp.1996).

In 1987, the legislature codified the distinction between proprietary and governmental functions of municipalities. *See id.* § 101.0215.[9] This provision continued to classify some activities as they had been classified under common law, reclassified others, and classified some activities that had not been classified before. *See Jones, supra*, at 609–613. Moreover, this classification applied for purposes of common law as well as the Act. *Mitchell v. City of Dallas*, 855

**4.** *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976).

**5.** *See Turvey v. City of Houston*, 602 S.W.2d 517, 519 (Tex.1980).

**6.** *See Hodge v. Lower Colorado River Auth.*, 163 S.W.2d 855, 856 (Tex.Civ.App.—Austin 1942, writ dism'd by agr.).

**7.** *See LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex.1992).

**8.** The test was whether the act was performed by the city primarily as the agent of the State for the interest of the public at large (governmental), or

for the benefit of those within the corporate limits of the municipality (proprietary). *City of Houston v. Quinones*, 142 Tex. 282, 177 S.W.2d 259, 261 (1944).

**9.** This statute was authorized by constitutional amendment which provided, "Notwithstanding any other provision of this constitution, the legislature may by law define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law." TEX. CONST. art. 11, § 13.

S.W.2d 741, 744 (Tex.App.—Dallas 1993), aff'd, 870 S.W.2d 21 (Tex.1994); *Dalon v. City of DeSoto*, 852 S.W.2d 530, 536 (Tex. App.—Dallas 1992, writ denied).

### Tort Claims Act Claims

In the first three of their four points of error, the Cranfords argue that summary judgment was improper because there were fact questions as to whether, under the Act, (1) the pole constituted a condition, (2) using and maintaining a traffic device is a non-discretionary act, and (3) the pole is a premise or special defect. They further argue that because the pole did not conform to standards in effect at the time it was erected and because the appellees later had notice of the danger, appellees cannot claim governmental immunity.

■ A cause of action for recovery under the Act must be based on an act or omission which occurred on or after January 1, 1970. Tex.Civ.Prac. & Rem.Code Ann. § 101.061.[10] Section 101.061 was intended to provide for abolition of governmental immunity without causing havoc. *Chapman v. City of Houston*, 839 S.W.2d 95, 99 (Tex.

App.—Houston [14th Dist.] 1992, writ denied). Subjecting the government to liability under the Act for structures built prior to the Act (and not thereafter changed) would place the government in an unfair position of trying to analyze every structure under its control and then rebuild, redesign and make safe those structures in order to defend against liability. *Id.* Therefore, the state cannot be held liable under the Act for acts or omissions occurring before January 1, 1970, and its continued failure to modify structures built before that date does not constitute an act or omission occurring after that date. *Tarrant County Water Control and Improvement Dist. v. Crossland*, 781 S.W.2d 427, 432 (Tex.App.—Fort Worth 1989, writ denied).

■ In this case, the undisputed summary judgment evidence showed that the pole was erected before January 1, 1970 and its placement was not thereafter changed.[11] Other than the failure to re-position the pole, the Cranfords did not allege an act or omission by the City or County occurring on or after January 1, 1970.[12] Under these circum-

10. *See Barron v. Texas Dep't of Transp.*, 880 S.W.2d 300, 302 (Tex.App.—Waco 1994, writ denied) (holding that, because bridge and guardrails were designed and constructed prior to 1970, the Act did not apply); *Chapman v. City of Houston*, 839 S.W.2d 95, 99 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (holding that where claims concerned a structure constructed prior to the Act, the State had governmental immunity); *Tarrant County Water Control and Improvement Dist. v. Crossland*, 781 S.W.2d 427, 432 (Tex.App.—Fort Worth 1989, writ denied) (holding that State had no liability for failure to place lights or other warning devices upon bridge designed and completed prior to 1970, or to otherwise warn its invitees or licensees of the danger); *Shives v. State*, 743 S.W.2d 714, 716 (Tex.App.—El Paso 1987, writ denied) (holding that State could not be held liable for design of intersection that was constructed 14 years prior to effective date of Act); *Burnett v. Texas Highway Dep't*, 694 S.W.2d 210, 211–212 (Tex.App.—Eastland 1985, writ ref'd n.r.e.) (holding that where portion of highway in question was constructed in 1961, driver and passenger injured in 1983 on that highway could not recover under the Act).

11. According to the appellees' summary judgment proof, the pole was constructed in 1969 as part of the traffic signal system at the intersection. The construction work was contracted for

by Harris County, which specified, among other things, the location of the pole. The City of Pasadena, which did not take part in the installation of the pole, annexed the intersection in September of 1970. The placement of the pole was not changed after its construction.

12. Governmental immunity under Chapter 101 of the Act is waived with regard to the "condition" of a traffic signal which is not corrected by the responsible governmental unit within a reasonable time after notice of the condition. Tex. Civ.Prac. & Rem.Code Ann. § 101.060(a)(2). In this case, the Cranfords argue that the allegedly defective placement of the pole constitutes such a condition and that the County and City had notice of the numerous traffic accidents resulting from it from reports in the news media. Indeed, one of the newspaper articles attached to the Cranfords' summary judgment response stated that 14 accidents resulting in four deaths took place at the intersection in 1991, and that 86 accidents had occurred from 1987 to June of 1982. However, none of these articles attributed any of the accidents or injuries to the placement of the strain pole. Instead, the articles suggested that the accidents were caused by such factors as the 55 mile per hour speed limit on the intersecting roadways, the confusing configuration of traffic signals, and driver error. Therefore, even if Section 101.060(a)(2) were otherwise applica-

stances, the City and County were not subject to liability under the Act pursuant to Section 101.061 as a matter of law. Since the Act does not apply to the Cranfords' claims, their first three points of error as to whether, under the Act, a strain pole is a condition, a non-discretionary act, or a special or premise defect need not be addressed and are overruled.

### Common Law Claims

In their fourth point of error, the Cranfords contend that summary judgment in favor of the City was improper because its alleged negligence was committed within the scope of a proprietary function under common law.

 Street construction and design and maintenance of traffic signals are now governmental functions for purposes of common law as well as the Act. *See* TEX.CIV. PRAC. & REM.CODE ANN. § 101.0215(a)(3), (a)(31); *Mitchell*, 855 S.W.2d at 744; *Dalon*, 852 S.W.2d at 536. Maintenance of traffic control signals was also a governmental function under common law before the Act. *Sparkman v. Maxwell*, 519 S.W.2d 852, 857 (Tex.1975).

 Since the City did not design or construct the pole, there is no basis for a claim of negligence against it with regard to the original placement of the pole. Moreover, since maintenance of traffic control signals is a governmental function, the City's maintenance of the pole, even if negligent,[13] was a governmental function for which the City is not liable under common law. *Id.* Therefore, the Cranfords have no claim for recovery against the City under common law. Accordingly, the Cranfords' fourth point of error is overruled and the judgment of the trial court is affirmed.

ble to a "condition" of this type, which we do not decide, the evidence presented did not raise a fact issue whether the appellees had notice of the allegedly defective placement of the pole in this case.

13. It is questionable whether a failure to reposition the pole would even be considered "maintenance" since that term has been defined to mean that which is required to preserve a condition as it was originally designed and constructed. *Shives*, 743 S.W.2d at 716.