No. 04-98-00837-CV


TEXAS RIVER BARGES,


Appellant/Appellee

v.


THE CITY OF SAN ANTONIO,


Appellee/Appellant


From the 224th Judicial District Court, Bexar County, Texas


Trial Court No. 96-CI-13733


Honorable Andy Mireles, Judge Presiding


Opinion by: Tom Rickhoff, Justice 

Sitting: Phil Hardberger, Chief Justice 

 Tom Rickhoff, Justice 

 Alma L. López, Justice

Delivered and Filed: January 12, 2000

AFFIRMED AS MODIFIED

 In this appeal, we must decide whether the City of San Antonio (the City) has authority to
regulate navigation on the San Antonio River (the River) and whether the City may be held liable
in tort for interfering with a private entity's operation of a commercial barge service on the River.
We conclude that the River is a navigable stream that may be used and enjoyed by the public, but
that the City may regulate navigation on the River to prevent endangering the public and
jeopardizing the River's distinctive and sedate character. We also conclude that the City is immune
from the tort claims asserted in this suit. 

Factual and Procedural Background


 In 1995, the City and Yanaguana Cruises, Inc., entered into a contract that granted Yanaguana
the exclusive right to operate dinner, tour, and taxi barges on an approximately 2.25 mile stretch of
the River in downtown San Antonio. This stretch of the River varies in width from 15 to 70 feet,
is bisected at points by bridge support columns, and at its narrowest points does not permit side-by-side passage of two barges. It is undisputed that the City owns the bed and banks of this stretch of
the River. See Heard v. Town of Refugio, 129 Tex. 349, 360, 103 S.W.2d 728, 734 (1937); Anderson
v. Polk, 117 Tex. 73, 297 S.W. 219 (1927). In exchange for the exclusive franchise, Yanaguana pays
the City 49% of gross yearly receipts or a minimum of $1,000,000 each year. The contract
recognized that the River "is defined as a navigable stream [and that] privately owned watercraft
cannot be lawfully prohibited from traversing the waters," but provided that the City would attempt
to prevent watercraft traffic conflicts in the interest of public safety. 

 In 1996, Texas River Barges (TRB) notified the City that it intended to operate a passenger
barge service in the area of the River encompassed by the exclusive franchise contract. The City
informed TRB that it would not be allowed to provide any service on the River that competed with
the service provided by Yanaguana. Undaunted, TRB began operating a barge on the River. City
officials arrived on the scene, boarded the barge, and moored the barge at a City marina. The City
later asked TRB to remove the barge from the marina. When TRB failed to do so, the City removed
the barge by crane and impounded it. TRB eventually reclaimed the barge.

 Soon after its barge was impounded, TRB instituted this suit. While the suit was pending,
the City enacted an ordinance providing that no boat or barge may be operated for commercial
purposes on the River between certain points within the City without the City Council's approval.
See San Antonio, Tx., Code § 22-143 (1997) (hereafter "the Ordinance").

 TRB's live pleading sought a declaratory judgment that the River is navigable under federal
and state law, that TRB has a right to operate on the River, that section 22-143 of the City Code is
void, and that the City's contract with Yanaguana violates the Texas Constitution's ban on
monopolies. TRB also sought damages for tortious interference with prospective business relations
and conversion. The City answered and counterclaimed for attorney's fees and costs pursuant to the
Declaratory Judgment Act.

 The City removed the suit to federal court and obtained a summary judgment that the River
is not navigable under federal law. The federal court remanded the other claims back to state court. 

 In state court, TRB moved for a partial summary judgment declaring that the River is either
navigable in fact or rendered navigable by statute. The City sought summary judgment on the
following grounds: the River is not navigable; regardless of whether the River is navigable, the City
is empowered to regulate traffic on it; section 22-143 of the City Code is valid; the Yanaguana
contract does not create an unconstitutional monopoly; the City is immune from liability for the
intentional torts of conversion and interference with prospective business relations; and there was
no evidence to support essential elements of TRB's claims.

 The trial court granted TRB's motion for partial summary judgment, concluding that the
River is rendered navigable by statute. But the court denied all other relief requested by TRB and
granted the City's motion for summary judgment. The court denied both parties' requests for
attorney's fees and costs.

Standard of Review


 We review a summary judgment de novo. See Sasser v. Dantex Oil & Gas , Inc., 906 S.W.2d
599, 602 (Tex. App.--San Antonio 1995, writ denied). Under Rule 166a(c), summary judgment is
proper when the summary judgment record establishes that there is no genuine issue of material fact
and that the movant is entitled to judgment as a matter of law on a ground set forth in the motion.
See Tex. R. Civ. P. 166a(c); Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex.
1985). The evidence must be viewed in the light most favorable to the nonmoving party and all
contrary evidence and inferences must be disregarded. See Nixon, 690 S.W.2d at 548-49. 

Navigability


 As noted above, the City's contract with Yanaguana expressly recognizes that the River "is
defined as a navigable stream [and] that privately owned watercraft cannot be lawfully prohibited
from traversing" it. Nevertheless, the City argued in the trial court that the River is not navigable.
 Navigable streams are held in trust for the public to use for navigation, fishing, and other
lawful purposes. See Carrithers v. Terramar Beach Community Improvement Ass'n, 645 S.W.2d
772, 774 (Tex. 1983); Diversion Lake Club v. Heath, 126 Tex. 129, 138, 86 S.W.2d 441, 445 (1935).
The public has a right to use navigable streams for commercial as well as recreational purposes. See,
e.g., Orange Lumber Co. v. Thompson, 59 Tex. Civ. App. 562, 126 S.W. 604 (1910, no writ). By
statute, "a stream which retains an average width of 30 feet from the mouth up" is a navigable
stream. Tex. Nat. Res. Code Ann. § 21.001(3) (Vernon 1978). The effect of this statute is to
render all streams navigable in law that have an average width of 30 feet, regardless of the ownership
of the beds of the streams and regardless of whether they are actually navigable. See Diversion Lake
Club, 126 Tex. at 137, 139, 86 S.W.2d at 444, 446.

 It is undisputed that the River retains an average width of at least 30 feet. Accordingly, the
trial court was correct in ruling that the River is navigable in law, even though its natural and
ordinary base flow within the corporate limits of San Antonio is insufficient to support navigation
of any kind except during periods of extraordinary rainfall and its natural flow ceases altogether in
some areas during periods of drought. See Heard, 129 Tex. at 353, 103 S.W.2d at 730 (holding that
a river having well-defined bed and banks and a normal flow varying from ankle deep to two feet,
but that ceases to flow and "stands in holes" during periods of prolonged drought was navigable
under the statute). 

 TRB argues that because the River is navigable, it has a right to operate its barge service on
the River. Accordingly, TRB sought a declaratory judgment to this effect, as well as a declaration
that the Ordinance is void. The City sought summary judgment on these claims by arguing that it
has the authority to regulate the River regardless of whether the River is navigable and that the
Ordinance is therefore valid. We turn now to consider these competing arguments.

The City's Power to Regulate Navigation on the River


 San Antonio is a home rule city. As such, it derives its powers not from the legislature, but
from the Texas Constitution. See Tex. Const. art. XI, § 5; Proctor v. Andrews, 972 S.W.2d 729,
733 (Tex. 1998). A home rule city has all the powers of the state not inconsistent with the Texas
Constitution, the general laws, or the city's charter. See Proctor, 972 S.W.2d at 733. The fact that
the legislature has addressed a subject does not ordinarily prevent a home-rule city from regulating
the same subject. See Dallas Merchant 's and Concessionaire's Ass'n v. City of Dallas, 852 S.W.2d
489, 491 (Tex. 1993). If the legislature chooses to preempt a subject usually encompassed within
the broad powers of a home-rule city, its intent to do so must appear with "unmistakable clarity."
Proctor, 972 S.W.2d at 733. 

 TRB contends that the City has no power to regulate navigation on the River and that the
Ordinance is therefore void for two reasons: 1) the legislature conferred the exclusive power to
regulate navigation on the River to the San Antonio River Authority; and 2) the City's charter does
not authorize the City to regulate the River.

 I. The San Antonio River Authority

 The Texas Constitution authorizes the legislature to pass laws related to the conservation and
development of the State's natural resources, including "the navigation of its inland and coastal
waters." Tex. Const. art. XVI, § 59(a). Pursuant to this grant of authority, the legislature created
the San Antonio River Authority (SARA), investing it with "all of the powers of the State of Texas
under Article 16, Section 59, of the Constitution," to effectuate flood prevention, water and soil
conservation, pollution control, and irrigation. Tex. Water Code Aux. Laws art. 8280-119, § 3
(Vernon 1999) [Act of April 15, 1981, 67th Leg., R.S., ch. 60, 1981 Tex. Gen. Laws 123] (hereinafter
SARA). An additional goal was to create a system of navigable canals or waterways from San
Antonio to the Intracoastal Canal. See id.; City of San Antonio v. Trease, 243 S.W.2d 187, 189 (Tex.
Civ. App. 1951, writ ref'd). To accomplish this goal, SARA was authorized:

 To promote, construct, maintain and operate, and/or to make practicable, promote, aid
and encourage, the construction, maintenance and operation of navigable canals or
waterways and all navigational systems or facilities auxiliary thereto using the natural
bed and banks of the San Antonio River to its junction with the Guadalupe River
where practicable and thence traversing such route as may be found by [SARA] to be
most feasible and practicable to connect with the Intracoastal Canal and/or with any
new canal to be constructed ....

SARA, supra, § 3(a)(1). SARA was also given the exclusive power to grant franchises for the use
of the proposed system of canals:

 [SARA] may grant a franchise or right to any person or body politic or
corporate for the use of said navigable canals or waterways and all navigational
systems or facilities auxiliary thereto or any facility thereof in aiding navigation and
no person or body politic or corporate may provide, maintain or operate any facility
of aid of navigation in any way connected with said navigable canals or waterways
and all navigational systems or facilities auxiliary thereto and intended for use by the
public within the meaning and intent of this Act, except by and under the franchise
granted by [SARA] ....

Id. § 3(a)(5).

 TRB argues that because SARA has "all of the powers" of the State of Texas under article
XVI, section 59 of the Texas Constitution, including the exclusive power to grant franchises for the
use of the system of navigable canals and "any facility of aid of navigation in any way connected with
said navigable canals," SARA has the exclusive authority to regulate navigation on the River. 

 The cardinal rule of statutory construction is to discern and give effect to the intent of the
legislature. See Sorokolit v. Rhodes, 889 S.W.2d 239, 241 (Tex. 1994). To determine the
legislature's intent, we consider the entire act as a whole. See Jones v. Fowler, 969 S.W.2d 429, 432
(Tex. 1998). Construction of a statute by the administrative agency charged with its enforcement is
entitled to serious consideration, so long as the construction is reasonable and does not contradict the
plain language of the statute. See Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex.
1993); University of Texas v. Joki, 735 S.W.2d 505, 509 (Tex. App.--Austin 1987, writ denied).

 It is apparent that the legislature intended to give SARA the power to construct a system of
"navigable canals or waterways" to connect San Antonio with the Intracoastal Canal. SARA, supra,
§ 3(a)(1). SARA's power to grant exclusive franchises expressly applies to "facilit[ies] of aid of
navigation in any way connected with said navigable canals or waterways." Id. § 3(a)(5) (emphasis
added). It is undisputed that the contemplated canal system was never constructed. Accordingly,
SARA's power to grant franchises related to the canal system has not been triggered. 

 This interpretation finds support in the testimony of Fred Pfeiffer, who has been the general
manager of SARA since 1968. Pfeiffer stated that SARA does not regulate navigation on the portion
of the River at issue in this case. He testified that although SARA's enabling legislation gave it the
power to construct a canal system to make the River commercially navigable between San Antonio
and the Intracoastal Canal, that goal was abandoned because it was financially unfeasible. Since the
canal system was never constructed, Pfeiffer concluded that SARA has no authority to regulate
navigation on the River in downtown San Antonio. This construction of the enabling legislation is
reasonable and does not contradict the plain language of the statutes when the legislation is
considered as a whole.

 TRB relies on City of Dallas v. Southwest Airlines Co., 371 F. Supp. 1015 (N.D. Tex. 1973),
aff'd, 494 F.2d 773 (5th Cir. 1974). In that case, municipalities sought to exclude an intrastate airline
from operating at a city-owned airport. The court determined that the legislature vested the Texas
Aeronautics Commission (TAC) with the authority to determine and provide for the public
convenience and necessity of the citizens of the entire state regarding all aspects of intrastate air
service. See Southwest Airlines, 371 F. Supp. at 1032-33. The municipalities' efforts to regulate the
airline impinged on TAC's jurisdiction and was therefore invalid. See id. at 1033. Moreover, TAC
had ordered the airline not to discontinue service at any airport. The municipalities' attempt to
exclude the airline's operations at the airport was in direct conflict with TAC's order. See id. at 1033-34. 

 TRB argues that the legislature vested exclusive authority over navigation on the River to
SARA and that the City's attempt to regulate navigation on the River therefore impinged on SARA's
jurisdiction. But under our interpretation of SARA's enabling legislation, SARA's exclusive
authority has never been triggered. Additionally, there is no direct conflict between the actions of
SARA and the City as there was between the actions of TAC and the municipalities in Southwest
Airlines, because SARA has not exercised any authority over navigation on the River in downtown
San Antonio.

 SARA's enabling legislation does not reveal, with "unmistakable clarity," Proctor, 972
S.W.2d at 733, that the legislature intended to grant SARA the exclusive authority to regulate
navigation on the River in downtown San Antonio. We therefore conclude that SARA's enabling
legislation does not preclude the City from regulating navigation on the portion of the River at issue
in this case. Having found no authority forbidding the City from regulating navigation on the River,
we next consider whether the power to regulate navigation on the River has been incorporated into
the City Charter.

 II. The City Charter

 A home-rule city's charter is its organic act; it is the fundamental law of the municipality just
as a constitution is the fundamental law of a state. See Anderson v. City of San Antonio, 123 Tex.
163, 166, 67 S.W.2d 1036, 1037 (1934); Central Power & Light Co. v. City of San Juan, 962 S.W.2d
602, 612 (Tex. App.--Corpus Christi 1998, writ dism'd w.o.j.). A city can exercise only such powers
as are expressly granted by the charter, such powers as may be reasonably implied from the powers
granted, and such powers as are incidental to the purpose for which the city was created. See
Anderson, 123 Tex. at 166, 67 S.W.2d at 1037; Central Power, 962 S.W.2d at 612; Zachry v. City
of San Antonio, 296 S.W.2d 299, 301 (Tex. Civ. App.--San Antonio 1956), aff'd, 157 Tex. 551, 305
S.W.2d 558 (1957). "It has been held that where the power of a municipal corporation is in question,
the grant of power will be strictly construed, and that such power should not be enlarged by a liberal
construction and if any fair, substantial and reasonable doubt exists as to any power, it is to be
resolved against the corporation and the power denied." Willman v. City of Corsicana, 213 S.W.2d
155, 157 (Tex. Civ. App.--Waco 1948), aff'd, 147 Tex. 377, 216 S.W.2d 175 (1949).

 The City Charter authorizes the City to enact ordinances "as shall be needed for the
government, interest, welfare and good order of the city and the interest, welfare, health, morals,
comfort, safety and convenience of its inhabitants." San Antonio, Tx., Charter art. I, § 3, ¶ 1.
This provision incorporates the police power as a power of the City. See 6A Eugene McQuillin,
The Law of Municipal Corporations § 24.43 (3rd ed. 1984). The police power has also been
expressly conferred on home-rule cities by statute. See Tex. Loc. Gov't Code Ann. § 54.004
(Vernon 1999). Pursuant to its police power, a municipality may enact ordinances designed to
promote the public safety and welfare. See 6A McQuillin, supra, § 24.10. Although it is impossible
to define the exact parameters of the police power, it is useful to think of it as the "power to anticipate
and prevent dangers and to protect the inhabitants of a community, and, in so doing, to restrain
individual tendencies." Id. 

 States may exert their police power over navigable waters within their boundaries. See Grand
Canyon Dories, Inc. v. Idaho Outfitters & Guides Bd., 709 S.W.2d 1250, 1254 (9th Cir. 1983);
Chicago R.I. & G. Ry. Co. v. Tarrant County Water Control & Improvement Dist. No. 1, 123 Tex.
432, 452, 73 S.W.2d 55, 66-67 (1934). Since San Antonio, as a home-rule city, has been delegated
the police power, it may exert the police power over the navigable waters within its boundaries. 

 In adopting the Ordinance, the City Council found that: It is necessary for the City to open or
close dams on the River from time to time, creating hazardous conditions for boating; unlimited boat
traffic on the River poses a danger of collisions between boats, danger to pedestrians, and threatens
the distinctive and sedate character of the River; and the public health, safety, and welfare requires
that the number of vessels on the River be limited. See San Antonio, Tx., Ordinance 85,958 (May
1, 1997). These findings represent an attempt to anticipate and prevent danger, to protect the public,
and to restrain individual tendencies. Accordingly, they are valid reasons for exercising the police
power. 

 Relying largely on Anderson v. City of San Antonio, TRB contends that the City cannot
regulate navigation on the River because its charter does not expressly refer to regulating navigation
on the River. In Anderson, the supreme court struck down an ordinance that levied a tax to advertise
San Antonio. See 123 Tex. at 166, 67 S.W.2d at 1037. The court held that the authority to levy a tax
for advertising purposes cannot be implied from charter provisions granting the police power and the
general power of taxation. See id. We believe Anderson is distinguishable from this case. Unlike
in Anderson, we are not confronted here with a novel tax, but with an established aspect of the police
power. See 6A McQuillin, supra, § 24.04 (distinguishing the police power from the power of
taxation). 

 We conclude that the police power incorporated into the City Charter authorizes the City to
enact ordinances regulating navigation on the River within the City's boundaries and that the exercise
of this authority does not conflict with the legislation creating SARA. Accordingly, the City was
entitled to summary judgment on the grounds that it is entitled to regulate navigation on the River and
that the Ordinance is valid. This disposes of TRB's claims for a declaratory judgment that it has a
current right to operate on the River and that the Ordinance is void.(1) 

Sovereign Immunity


 The City sought summary judgment on TRB's claims for conversion and interference with
prospective business relations on the basis of sovereign immunity. Because sovereign immunity is
an affirmative defense, summary judgment on this ground was proper only if the City established the
defense as a matter of law. See Cranford v. City of Pasadena, 917 S.W.2d 484, 486 (Tex.
App.--Houston [14th Dist.] 1996, no writ). 

 When a municipality commits a tort while engaged in a proprietary function, it is liable to the
same extent as a private entity or individual. See Dilley v. City of Houston, 148 Tex. 191, 193, 222
S.W.2d 992, 993 (1949); Cranford, 917 S.W.2d at 487. When a municipality commits a tort while
engaged in a governmental function, its liability is determined by the provisions of the Texas Tort
Claims Act (the Act). See Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a) (Vernon Supp. 1999);
Cranford, 917 S.W.2d at 487. Under the Act, a municipality is immune from liability for intentional
torts. See Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (Vernon 1997). Therefore, if the City
was engaged in a governmental function when it removed TRB's barge from the marina and
prohibited TRB from operating on the River, it is immune from liability for conversion and
interference with prospective business relations. 

 Governmental functions are those functions that are enjoined on a municipality by law and
are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the
interest of the general public. See id. § 101.0215(a) (Vernon Supp. 1999). Proprietary functions are
those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of
the municipality. See id. § 101.0215(b) (Vernon 1997). The Act sets out nonexclusive lists of
functions that the legislature deems governmental and proprietary. The following are included in the
list of governmental functions: parks; reservoirs; regulation of traffic; transportation systems; and
recreational facilities, including but not limited to swimming pools, beaches, and marinas. See id.
§ 101.0215(a)(13), (19), (21), (22), (23) (Vernon Supp. 1999). 

 In its motion for summary judgment, the City argued that it was engaged in one or more of
the above governmental functions when it removed TRB's barge from the marina and prohibited it
from operating on the River. Clearly, the City's removal of TRB's barge from the City-owned marina
was a governmental function, since the Act expressly defines the operation of marinas as a
governmental function. The summary judgment evidence also indicates that the portion of the River
at issue is operated as a park. Thus, the City's actions were encompassed within the functions of
operating a marina and a park and of regulating traffic on the River.

 TRB does not address the City's argument that its actions were encompassed within one or
more of the statutorily defined governmental functions. Instead, TRB argues that the City's actions
were proprietary because its motives were pecuniary. TRB relies on the deposition testimony of the
official who ordered the barge to be removed from the River. The official was unable to identify any
ordinance or statute that TRB was violating by operating its barge; he only knew that TRB's operation
of the barge on the River violated the City's contract with Yanaguana. While one might infer from
this testimony that the City was motivated to protect its profitable contract with Yanaguana, the City's
motives are irrelevant under the Act. Because the City's actions were encompassed within the
governmental functions listed in the Act, we have no discretion to declare the actions proprietary,
regardless of the City's motives. See Herschbach v. City of Corpus Christi, 883 S.W.2d 720, 730
(Tex. App.-Corpus Christi 1994, writ denied); Mitchell v. City of Dallas, 855 S.W.2d 741, 744 (Tex.
App.--Dallas 1993), aff 'd, 870 S.W.2d 21 (Tex. 1994); see also Tex. Civ. Prac. & Rem. Code Ann.
§ 101.0215(c) (Vernon 1997) ("The proprietary functions of a municipality do not include those
governmental activities listed [in §101.0215(a)]."); Christopher D. Jones, Comment, Texas Municipal
Liability: An Examination of the State and Federal Causes of Action, 40 Baylor L. Rev. 595, 615
(1988) ("[I]n regard to mixed functions, the rule now seems to be that if any one component of a
function is governmental, the entire function will be considered governmental ...."). 

 TRB also argues that the City is combining with Yanaguana to operate an amusement
business. The Act defines "amusements owned and operated by the municipality" as proprietary.
Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(b)(2) (Vernon 1997). The City does not own or
operate Yanaguana or its barges. Therefore, section 101.0215(b)(2) does not apply. 

 Because the City was engaged in statutorily defined governmental functions when it removed
TRB's barge from the marina and prohibited TRB from operating its barge service on the River, the
City is immune from liability on TRB's claims for conversion and interference with prospective
business relations. Therefore, the summary judgment in favor of the City on these claims was proper.

Validity of Yanaguana Contract


 TRB requests us to declare the contract between the City and Yanaguana void because it
violates the City Charter's prohibition on exclusive franchises. See San Antonio, Tx., Charter §
130. TRB did not request such a declaration in its petition. A claim may not be asserted for the first
time on appeal. See Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex. 1993). TRB's petition did request
that enforcement of the contract be enjoined because it violates the constitutional prohibition against
monopolies, see Tex. Const. art. I, § 26, but it has abandoned this claim by failing to argue it on
appeal. See Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993). 

 Even if TRB had sought a declaration that the contract violates the City Charter's prohibition
on exclusive franchises, it would not be entitled to such a declaration because it failed to join
Yanaguana as a party to this suit. As a party to the contract, Yanaguana is an indispensable party to
any litigation that seeks to declare the contract void. See Love v. Moore, 344 S.W.2d 466, 467 (Tex.
Civ. App.--Houston 1961, no writ); Cook v. Town of Putnam, 283 S.W. 649, 650 (Tex. Civ.
App.--Eastland 1926, writ dism'd w.o.j.).

 We also note that we need not determine the validity of the Yanaguana contract in order to
resolve the other issues in this appeal. Although the Ordinance requires an entity seeking to operate
a commercial barge service on the River to obtain the approval of the City Council, the Ordinance
does not expressly provide that approval will only be granted to one entity. We therefore found it
unnecessary to determine whether the City may properly grant an exclusive franchise for commercial
barge services on the River in order to decide whether the Ordinance is valid. We also determined
that the City is immune from liability for conversion and interference with prospective business
relations regardless of whether it acted solely to protect the exclusive franchise contract with
Yanaguana. Accordingly, we express no opinion on whether the granting of an exclusive franchise
violates the Texas Constitution or the City Charter. 

Attorney's Fees and Costs


 The City argues that the trial court erred by refusing to award it attorney's fees and costs.

 A "successful party to a suit shall recover of [its] adversary all costs incurred therein, except
where otherwise provided." Rule 131 applies to summary judgment proceedings. See Maxwell v.
Mani, 892 S.W.2d 146, 156 (Tex. App.-Houston [14th Dist.] 1994), rev'd on other grounds, 909
S.W.2d 889 (Tex. 1995). A trial court abuses its discretion when it allots costs contrary to the
provisions of Rule 131 without including in the record an explanation for the allotment. See Scholl
v. Home Owners Warranty Corp., 810 S.W.2d 464, 468 (Tex. App.-San Antonio 1991, no writ).
Although the City was the successful party in this case, the trial court refused, without explanation,
to award the City its costs. This was an abuse of discretion. 

 A trial court may award attorney's fees "[i]n any proceeding" under the Declaratory Judgment
Act. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997). A party who wins a declaratory
judgment proceeding at summary judgment is eligible for attorney's fees under section 37.009. See
Chandler v. Chandler, 991 S.W.2d 367, 405-06 (Tex. App.--El Paso 1999, pet. denied). But the
party seeking attorney's fees must establish the amount and reasonableness of the fees. See id. On
appeal, the City has not pointed this court to any summary judgment proof of the amount and
reasonableness of its attorney's fees. Therefore, we cannot conclude that the court abused its
discretion in denying the City's request for attorney's fees. 

Conclusion


 For the reasons stated herein, we affirm the summary judgment granted in the City's favor.
We will modify the judgment to award the City its costs in the trial court.

 Tom Rickhoff, Justice 

PUBLISH

1. It does not, however, dispose of TRB's claims for conversion and interference with prospective business
relations. The Ordinance did not exist when the City removed TRB's barge, and the City has not identified any other
ordinance, statute, or regulation that authorized its action. Because of our disposition of the City's sovereign immunity
defense, see infra, we express no opinion on the propriety of that action. We note, however, that the police power does
not authorize government officials to make an ad hoc determination that a particular activity is detrimental to the public
good and then mete out an ad hoc punishment. The police power must ordinarily be exercised through properly enacted
statutes, ordinances, or regulations. See 6A Mcquillin, supra, § 24.43.