## CITY OF SAN ANTONIO et al. v. TREASE.

### No. 12364.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 3, 1951.

Rehearing Denied Oct. 31, 1951.

Jack Davis, C. J. Matthews, Brewer, Matthews, Nowlin & Macfarlane, and W. L. Matthews, all of San Antonio, for appellants.

L. M. Bickett, Louie Arnett, San Antonio, for appellee.

NORVELL, Justice.

The court below granted a temporary injunction at the instance of appellee, Peter Trease, upon the recited basis that "the City of San Antonio is without authority to condemn the property of plaintiff (appellee) for the purposes of flood control." Rule 683, Texas Rules of Civil Procedure.

By proceedings instituted in the County Court, the City sought to condemn certain tracts of land owned by appellee and lying along the banks of the San Antonio River near Fifth Street and within its corporate limits in order to straighten the course of the river. Appellee sought an injunction in the District Court against the City and its contractor, Bart Moore Construction Company. The City filed a cross-action seek-

ing condemnation in the District Court, as is permitted by Article 3269, Vernon's Ann.Civ.Stats. It was stipulated that the City should deposit into the registry of the Court the sum of $25,000 as the minimum amount that might be awarded to appellee as damages and as security for the payment of damages due him, the ultimate amount to be determined upon the trial of the case on its merits. Article 3268, Vernon's Ann.Civ.Stats.; Brazos River Conservation and Reclamation District v. Costello, 135 Tex. 307, 143 S.W.2d 577, 130 A.L.R. 1220. This case was thus narrowed down to the question of the authority and power of the City to condemn the property described in the City's cross-action for flood control purposes. Article 3264 et seq., Vernon's Ann.Civ.Stats.

In our opinion it is clear that the City possesses this power. San Antonio is a Home Rule City operating under the provisions of Article 11, § 5, of the Constitution of Texas, Vernon's Ann.St. Article 1175, Vernon's Ann.Civ.Stats., which is a part of Chapter 13 of the Revised Statutes of 1925, relating to Home Rule Cities, provides that:

"Cities adopting the charter or amendment hereunder shall have full power of local self-government, and among the other powers that may be exercised by any such city the following are hereby enumerated for greater certainty:

\* \* \* \* \* \*

"15. To have the power to appropriate private property for public purposes whenever the governing authorities shall deem it necessary; to take any private property within or without the city limits for any of the following purposes; city halls, police stations, \* \* \* sewer systems, storm sewers, sewerage disposal plants, drains, filtering beds and emptying grounds for sewer systems, reservoirs, water sheds, water supply sources, wells, water and electric light systems, gas plants, cemeteries, crematories, prison farms, and to acquire lands within and without the city for any other municipal purposes that may be deemed advisable. *The power herein granted for the purpose of acquiring private property shall include* the power of the improvement and enlargement of the water works, including water supply, riparian rights, stand pipes, water sheds, the construction of supply reservoirs, parks, squares and pleasure grounds, public wharves, and landing places for steamers and other crafts, *and for the purpose of straightening or improving the channels of any stream, branch or drain,* or the straightening, widening or extension of any street, alley, avenue or boulevard. The power of eminent domain hereby conferred shall include the right of the governing authority, when so expressed, to take the fee in the lands so condemned and such power and authority shall include the right to condemn public property for such purposes." (Italics ours.)

Section 67 of the Charter of the City of San Antonio provides that the City shall have power "to provide measures to keep the waters of the river and streams pure, to remove all obstructions or dams in said river or streams within the limits of the City; *to widen and deepen the channel of said river and streams,* to prevent the erection of factories or establishments on the banks of any stream or ditches which will befoul or make impure the waters of such river or ditches; *to alter and establish the channels of any streams,* ditches or water courses within the limits of the City when the health, safety or convenience of the City requires such to be done, and to wall up or cover ditches or canals; to make, regulate and abolish irrigation ditches and have full control of the same and to fix the terms and prices to be charged for water therefrom."

Section 97 of the Charter authorizes the City, "to acquire on behalf of and for the use of the City by purchase, gift, devise or condemnation any private property or any interest therein, whether such property be situated within or without the city limits of said city which may be necessary or proper for the establishment and maintenance of an efficient system of sewers or for the purpose of establishing a water or electric light plant, and for other proper corporate purposes."

In 1937, the Forty-fifth Legislature created the San Antonio River Canal and Con-

servancy District. The Act relating to the district was amended in 1939, and in 1949 the Legislature remitted to the district for a period of two years all state ad valorem taxes collected within the counties lying within the boundaries of the district, namely, Bexar, Wilson, Karnes and Goliad. See Acts 1937, 45th Leg., p. 556, Ch. 276; Acts 1939, 46th Leg. Special Laws, p. 1083, Ch. 9, and Acts 1949, 51st Leg., p. 554, Ch. 304, Vernon's Ann.Civ.Stats. under Title 128, Ch. 8, Pocket Part, following art. 8197f.

This Canal and Conservancy District was created under and by virtue of Article 16, § 59, of the Constitution of the State of Texas and is possessed of broad and extensive powers, including the authority "to prevent and aid in preventing damages to persons and property by overflow of the San Antonio River and its tributaries"; as well as the power "to acquire by purchase, lease, gift, or in any other lawful manner and to maintain, use, and operate any and all property of any kind, real, personal or mixed, or any interest therein, within or without the boundaries of the District, necessary or convenient to the exercise of the powers, rights, privileges, and functions conferred upon it by this Act, in the manner provided by General Law with respect to condemnation or, at the option of the District, in the manner provided by the Statutes relative to condemnation by Districts organized under General Law pursuant to Section 59 of Article 16 of the Constitution of the State of Texas." Paragraphs (c) and (e) of Section 3, relating to powers of the District, Acts 1939, 46th Leg.Special Laws, p. 1083, Ch. 9.

The Legislative Act is quite lengthy and for our purposes need not be quoted from extensively. It is clear to us that the statutory enactments passed in pursuance of the Home Rule Amendment to the Constitution, Article 1175, Vernon's Ann.Civ.Stats., as well as the Charter of the City of San Antonio, vests said City with full power and authority to condemn land along and near the San Antonio River for the purpose of straightening, widening and deepening the channel thereof for flood control purposes. It is likewise readily apparent from an examination of the Act creating the San Antonio River Canal and Conservancy District, that the Legislature had no intention of depriving the City of San Antonio of any of the powers theretofore vested in it with reference to the adoption of flood control measures. The purpose (among others) of the Act was to create an agency embracing the counties through which the San Antonio River flows, designed to promote and aid in the construction and maintenance of a navigable canal or waterway from the source of the river near San Antonio to its confluence with the Guadalupe, and to promote and aid in the controlling of damaging floods and overflows of the river and its tributaries. This latter power was not intended to be exclusive. The Act does not purport to repeal any law in existence at the time of its passage. There is no implication that any part of Article 1175 was repealed thereby. It seems that the Legislature in creating the District contemplated that it would aid, assist and co-operate with other municipalities and governmental bodies in controlling floods and overflows from the river. It was not intended that the powers of the district should be exclusive and forbid cities along the banks of the river from straightening, widening or deepening the river channel and adopting other flood control measures.

This is not a contest relating to authority or jurisdiction between the City of San Antonio and the Canal and Conservancy District. It seems that upon the particular project here involved the District is co-operating with the City. We may assume that although the City and the District in certain respects function within a common orbit, they will proceed without discord in carrying out their respective functions and adjust by mutual agreement any conflicts of authority that might arise between them in the future. When such efforts to reach accord have failed, the courts will then adjudicate such differences. City of Pelly v. Harris County Water Control & Improvement Dist. No. 7, 145 Tex. 443, 198 S.W. 2d 450. No such question is now before us.

In this case, a landowner is asserting that the City of San Antonio lacks the power to condemn his property.

■ We hold that the City of San Antonio possesses the authority to condemn property for flood control purposes under the power of eminent domain.

The order of the district judge based upon a holding to the contrary is reversed and the temporary injunction vacated.

Order reversed, injunction vacated.