**TEXAS RIVER BARGES,**
**Appellant/Appellee,**

v.

**THE CITY OF SAN ANTONIO,**
**Appellee/Appellant.**

No. 04–98–00837–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 12, 2000.

Rehearing Overruled Feb. 16, 2000.

Ryan G. Anderson, Brendan K. McBride, Thad D. Spalding, Grant T. McFarland, Prichar, Hawkins & Young, L.L.P., San Antonio, Michael P. Hodge, Asst. City Atty., Chief, Litigation Section, San Antonio, Russell S. Johnson, Bracewell & Patterson, L.L.P., San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice.

## OPINION

Opinion by: TOM RICKHOFF, Justice.

In this appeal, we must decide whether the City of San Antonio (the City) has authority to regulate navigation on the San Antonio River (the River) and whether the City may be held liable in tort for interfering with a private entity's operation of a commercial barge service on the River. We conclude that the River is a navigable stream that may be used and enjoyed by the public, but that the City may regulate navigation on the River to prevent endangering the public and jeopardizing the River's distinctive and sedate character. We also conclude that the City is immune from the tort claims asserted in this suit.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1995, the City and Yanaguana Cruises, Inc., entered into a contract that granted Yanaguana the exclusive right to operate dinner, tour, and taxi barges on an approximately 2.25 mile stretch of the River in downtown San Antonio. This stretch of the River varies in width from 15 to 70 feet, is bisected at points by bridge sup-

port columns, and at its narrowest points does not permit side-by-side passage of two barges. It is undisputed that the City owns the bed and banks of this stretch of the River. *See Heard v. Town of Refugio,* 129 Tex. 349, 360, 103 S.W.2d 728, 734 (1937); *Anderson v. Polk,* 117 Tex. 73, 297 S.W. 219 (1927). In exchange for the exclusive franchise, Yanaguana pays the City 49% of gross yearly receipts or a minimum of $1,000,000 each year. The contract recognized that the River "is defined as a navigable stream [and that] privately owned watercraft cannot be lawfully prohibited from traversing the waters," but provided that the City would attempt to prevent watercraft traffic conflicts in the interest of public safety.

In 1996, Texas River Barges (TRB) notified the City that it intended to operate a passenger barge service in the area of the River encompassed by the exclusive franchise contract. The City informed TRB that it would not be allowed to provide any service on the River that competed with the service provided by Yanaguana. Undaunted, TRB began operating a barge on the River. City officials arrived on the scene, boarded the barge, and moored the barge at a City marina. The City later asked TRB to remove the barge from the marina. When TRB failed to do so, the City removed the barge by crane and impounded it. TRB eventually reclaimed the barge.

Soon after its barge was impounded, TRB instituted this suit. While the suit was pending, the City enacted an ordinance providing that no boat or barge may be operated for commercial purposes on the River between certain points within the City without the City Council's approval. *See* SAN ANTONIO, TX., CODE § 22–143 (1997) (hereafter "the Ordinance").

TRB's live pleading sought a declaratory judgment that the River is navigable under federal and state law, that TRB has a right to operate on the River, that section 22–143 of the City Code is void, and that the City's contract with Yanaguana violates the Texas Constitution's ban on monopolies. TRB also sought damages for tortious interference with prospective business relations and conversion. The City answered and counterclaimed for attorney's fees and costs pursuant to the Declaratory Judgment Act.

The City removed the suit to federal court and obtained a summary judgment that the River is not navigable under federal law. The federal court remanded the other claims back to state court.

In state court, TRB moved for a partial summary judgment declaring that the River is either navigable in fact or rendered navigable by statute. The City sought summary judgment on the following grounds: the River is not navigable; regardless of whether the River is navigable, the City is empowered to regulate traffic on it; section 22–143 of the City Code is valid; the Yanaguana contract does not create an unconstitutional monopoly; the City is immune from liability for the intentional torts of conversion and interference with prospective business relations; and there was no evidence to support essential elements of TRB's claims.

The trial court granted TRB's motion for partial summary judgment, concluding that the River is rendered navigable by statute. But the court denied all other relief requested by TRB and granted the City's motion for summary judgment. The court denied both parties' requests for attorney's fees and costs.

### STANDARD OF REVIEW

We review a summary judgment *de novo. See Sasser v. Dantex Oil & Gas, Inc.,* 906 S.W.2d 599, 602 (Tex.App.—San Antonio 1995, writ denied). Under Rule 166a(c), summary judgment is proper when the summary judgment record establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law on a ground set forth in the motion. *See* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property*

*Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). The evidence must be viewed in the light most favorable to the nonmoving party and all contrary evidence and inferences must be disregarded. *See Nixon,* 690 S.W.2d at·548–49.

## NAVIGABILITY

■ As noted above, the City's contract with Yanaguana expressly recognizes that the River "is defined as a navigable stream [and] that privately owned watercraft cannot be lawfully prohibited from traversing" it. Nevertheless, the City argued in the trial court that the River is not navigable.

■ Navigable streams are held in trust for the public to use for navigation, fishing, and other lawful purposes. *See Carrithers v. Terramar Beach Community Improvement Ass'n,* 645 S.W.2d 772, 774 (Tex.1983); *Diversion Lake Club v. Heath,* 126 Tex. 129, 138, 86 S.W.2d 441, 445 (1935). The public has a right to use navigable streams for commercial as well as recreational purposes. *See, e.g., Orange Lumber Co. v. Thompson,* 59 Tex.Civ.App. 562, 126 S.W. 604 (1910, no writ). By statute, "a stream which retains an average width of 30 feet from the mouth up" is a navigable stream. TEX. NAT. RES.CODE ANN. § 21.001(3) (Vernon 1978). The effect of this statute is to render all streams navigable in law that have an average width of 30 feet, regardless of the ownership of the beds of the streams and regardless of whether they are actually navigable. *See Diversion Lake Club,* 126 Tex. at 137, 139, 86 S.W.2d at 444, 446.

It is undisputed that the River retains an average width of at least 30 feet. Accordingly, the trial court was correct in ruling that the River is navigable in law, even though its natural and ordinary base flow within the corporate limits of San Antonio is insufficient to support navigation of any kind except during periods of extraordinary rainfall and its natural flow ceases altogether in some areas during periods of drought. *See Heard,* 129 Tex. at 353, 103 S.W.2d at 730 (holding that a river having well-defined bed and banks and a normal flow varying from ankle deep to two feet, but that ceases to flow and "stands in holes" during periods of prolonged drought was navigable under the statute).

TRB argues that because the River is navigable, it has a right to operate its barge service on the River. Accordingly, TRB sought a declaratory judgment to this effect, as well as a declaration that the Ordinance is void. The City sought summary judgment on these claims by arguing that it has the authority to regulate the River regardless of whether the River is navigable and that the Ordinance is therefore valid. We turn now to consider these competing arguments.

## THE CITY'S POWER TO REGULATE NAVIGATION ON THE RIVER

■ San Antonio is a home rule city. As such, it derives its powers not from the legislature, but from the Texas Constitution. *See* TEX. CONST. art. XI, § 5; *Proctor v. Andrews,* 972 S.W.2d 729, 733 (Tex. 1998). A home rule city has all the powers of the state not inconsistent with the Texas Constitution, the general laws, or the city's charter. *See Proctor,* 972 S.W.2d at 733. The fact that the legislature has addressed a subject does not ordinarily prevent a home-rule city from regulating the same subject. *See Dallas Merchant's and Concessionaire's Ass'n v. City of Dallas,* 852 S.W.2d 489, 491 (Tex.1993). If the legislature chooses to preempt a subject usually encompassed within the broad powers of a home-rule city, its intent to do so must appear with "unmistakable clarity." *Proctor,* 972 S.W.2d at 733.

TRB contends that the City has no power to regulate navigation on the River and that the Ordinance is therefore void for two reasons: 1) the legislature conferred the exclusive power to regulate navigation on the River to the San Antonio River Authority; and 2) the City's charter does

not authorize the City to regulate the River.

## I. The San Antonio River Authority

■ The Texas Constitution authorizes the legislature to pass laws related to the conservation and development of the State's natural resources, including "the navigation of its inland and coastal waters." TEX. CONST. art. XVI, § 59(a). Pursuant to this grant of authority, the legislature created the San Antonio River Authority (SARA), investing it with "all of the powers of the State of Texas under Article 16, Section 59, of the Constitution," to effectuate flood prevention, water and soil conservation, pollution control, and irrigation. TEX. WATER CODE AUX. LAWS art. 8280–119, § 3 (Vernon 1999) [Act of April 15, 1981, 67th Leg., R.S., ch. 60, 1981 Tex. Gen. Laws 123] (hereinafter SARA). An additional goal was to create a system of navigable canals or waterways from San Antonio to the Intracoastal Canal. *See id.; City of San Antonio v. Trease*, 243 S.W.2d 187, 189 (Tex.Civ.App. 1951, writ ref'd). To accomplish this goal, SARA was authorized:

> To promote, construct, maintain and operate, and/or to make practicable, promote, aid and encourage, the construction, maintenance and operation of navigable canals or waterways and all navigational systems or facilities auxiliary thereto using the natural bed and banks of the San Antonio River to its junction with the Guadalupe River where practicable and thence traversing such route as may be found by [SARA] to be most feasible and practicable to connect with the Intracoastal Canal and/or with any new canal to be constructed....

SARA, *supra*, § 3(a)(1). SARA was also given the exclusive power to grant franchises for the use of the proposed system of canals:

> [SARA] may grant a franchise or right to any person or body politic or corporate for the use of said navigable

canals or waterways and all navigational systems or facilities auxiliary thereto or any facility thereof in aiding navigation and no person or body politic or corporate may provide, maintain or operate any facility of aid of navigation in any way connected with said navigable canals or waterways and all navigational systems or facilities auxiliary thereto and intended for use by the public within the meaning and intent of this Act, except by and under the franchise granted by [SARA]....

*Id.* § 3(a)(5).

TRB argues that because SARA has "all of the powers" of the State of Texas under article XVI, section 59 of the Texas Constitution, including the exclusive power to grant franchises for the use of the system of navigable canals and "any facility of aid of navigation in any way connected with said navigable canals," SARA has the exclusive authority to regulate navigation on the River.

■ The cardinal rule of statutory construction is to discern and give effect to the intent of the legislature. *See Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex.1994). To determine the legislature's intent, we consider the entire act as a whole. *See Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998). Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute. *See Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex.1993); *University of Texas v. Joki*, 735 S.W.2d 505, 509 (Tex.App.—Austin 1987, writ denied).

It is apparent that the legislature intended to give SARA the power to construct a system of "navigable canals or waterways" to connect San Antonio with the Intracoastal Canal. SARA, *supra*, § 3(a)(1). SARA's power to grant exclusive franchises expressly applies to "facilit[ies] of aid of navigation in any way connected with *said* navigable canals or

waterways." *Id.* § 3(a)(5) (emphasis added). It is undisputed that the contemplated canal system was never constructed. Accordingly, SARA's power to grant franchises related to the canal system has not been triggered.

This interpretation finds support in the testimony of Fred Pfeiffer, who has been the general manager of SARA since 1968. Pfeiffer stated that SARA does not regulate navigation on the portion of the River at issue in this case. He testified that although SARA's enabling legislation gave it the power to construct a canal system to make the River commercially navigable between San Antonio and the Intracoastal Canal, that goal was abandoned because it was financially unfeasible. Since the canal system was never constructed, Pfeiffer concluded that SARA has no authority to regulate navigation on the River in downtown San Antonio. This construction of the enabling legislation is reasonable and does not contradict the plain language of the statutes when the legislation is considered as a whole.

TRB relies on *City of Dallas v. Southwest Airlines Co.,* 371 F.Supp. 1015 (N.D.Tex.1973), *aff'd,* 494 F.2d 773 (5th Cir.1974). In that case, municipalities sought to exclude an intrastate airline from operating at a city-owned airport. The court determined that the legislature vested the Texas Aeronautics Commission (TAC) with the authority to determine and provide for the public convenience and necessity of the citizens of the entire state regarding all aspects of intrastate air service. *See Southwest Airlines,* 371 F.Supp. at 1032–33. The municipalities' efforts to regulate the airline impinged on TAC's jurisdiction and was therefore invalid. *See id.* at 1033. Moreover, TAC had ordered the airline not to discontinue service at any airport. The municipalities' attempt to exclude the airline's operations at the airport was in direct conflict with TAC's order. *See id.* at 1033–34.

TRB argues that the legislature vested exclusive authority over navigation on the River to SARA and that the City's attempt to regulate navigation on the River therefore impinged on SARA's jurisdiction. But under our interpretation of SARA's enabling legislation, SARA's exclusive authority has never been triggered. Additionally, there is no direct conflict between the actions of SARA and the City as there was between the actions of TAC and the municipalities in *Southwest Airlines,* because SARA has not exercised any authority over navigation on the River in downtown San Antonio.

SARA's enabling legislation does not reveal, with "unmistakable clarity," *Proctor,* 972 S.W.2d at 733, that the legislature intended to grant SARA the exclusive authority to regulate navigation on the River in downtown San Antonio. We therefore conclude that SARA's enabling legislation does not preclude the City from regulating navigation on the portion of the River at issue in this case. Having found no authority forbidding the City from regulating navigation on the River, we next consider whether the power to regulate navigation on the River has been incorporated into the City Charter.

## II. The City Charter

A home-rule city's charter is its organic act; it is the fundamental law of the municipality just as a constitution is the fundamental law of a state. *See Anderson v. City of San Antonio,* 123 Tex. 163, 166, 67 S.W.2d 1036, 1037 (1934); *Central Power & Light Co. v. City of San Juan,* 962 S.W.2d 602, 612 (Tex.App.— Corpus Christi 1998, writ dism'd w.o.j.). A city can exercise only such powers as are expressly granted by the charter, such powers as may be reasonably implied from the powers granted, and such powers as are incidental to the purpose for which the city was created. *See Anderson,* 123 Tex. at 166, 67 S.W.2d at 1037; *Central Power,* 962 S.W.2d at 612; *Zachry v. City of San Antonio,* 296 S.W.2d 299, 301 (Tex.Civ. App.—San Antonio 1956), *aff'd,* 157 Tex. 551, 305 S.W.2d 558 (1957). "It has been

held that where the power of a municipal corporation is in question, the grant of power will be strictly construed, and that such power should not be enlarged by a liberal construction and if any fair, substantial and reasonable doubt exists as to any power, it is to be resolved against the corporation and the power denied." *Willman v. City of Corsicana*, 213 S.W.2d 155, 157 (Tex.Civ.App.—Waco 1948), *aff'd*, 147 Tex. 377, 216 S.W.2d 175 (1949).

■ The City Charter authorizes the City to enact ordinances "as shall be needed for the government, interest, welfare and good order of the city and the interest, welfare, health, morals, comfort, safety and convenience of its inhabitants." SAN ANTONIO, TX., CHARTER art. I, § 3, ¶ 1. This provision incorporates the police power as a power of the City. *See* 6A EUGENE McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 24.43 (3rd ed.1984). The police power has also been expressly conferred on home-rule cities by statute. *See* TEX. LOC. GOV'T CODE ANN. § 54.004 (Vernon 1999). Pursuant to its police power, a municipality may enact ordinances designed to promote the public safety and welfare. *See* 6A McQUILLIN, *supra*, § 24.10. Although it is impossible to define the exact parameters of the police power, it is useful to think of it as the "power to anticipate and prevent dangers and to protect the inhabitants of a community, and, in so doing, to restrain individual tendencies." *Id.*

■ States may exert their police power over navigable waters within their boundaries. *See Grand Canyon Dories, Inc. v. Idaho Outfitters & Guides Bd.*, 709 F.2d 1250, 1254 (9th Cir.1983); *Chicago R.I. & G. Ry. Co. v. Tarrant County Water Control & Improvement Dist. No. 1*, 123 Tex. 432, 452, 73 S.W.2d 55, 66–67 (1934). Since San Antonio, as a home-rule city, has been delegated the police power, it may exert the police power over the navigable waters within its boundaries.

In adopting the Ordinance, the City Council found that: It is necessary for the City to open or close dams on the River from time to time, creating hazardous conditions for boating; unlimited boat traffic on the River poses a danger of collisions between boats, danger to pedestrians, and threatens the distinctive and sedate character of the River; and the public health, safety, and welfare requires that the number of vessels on the River be limited. *See* San Antonio, Tx., Ordinance 85,958 (May 1, 1997). These findings represent an attempt to anticipate and prevent danger, to protect the public, and to restrain individual tendencies. Accordingly, they are valid reasons for exercising the police power.

Relying largely on *Anderson v. City of San Antonio*, TRB contends that the City cannot regulate navigation on the River because its charter does not expressly refer to regulating navigation on the River. In *Anderson*, the supreme court struck down an ordinance that levied a tax to advertise San Antonio. *See* 123 Tex. at 166, 67 S.W.2d at 1037. The court held that the authority to levy a tax for advertising purposes cannot be implied from charter provisions granting the police power and the general power of taxation. *See id.* We believe *Anderson* is distinguishable from this case. Unlike in *Anderson*, we are not confronted here with a novel tax, but with an established aspect of the police power. *See* 6A McQUILLIN, *supra*, § 24.04 (distinguishing the police power from the power of taxation).

■ We conclude that the police power incorporated into the City Charter authorizes the City to enact ordinances regulating navigation on the River within the City's boundaries and that the exercise of this authority does not conflict with the legislation creating SARA. Accordingly, the City was entitled to summary judgment on the grounds that it is entitled to regulate navigation on the River and that the Ordinance is valid. This disposes of TRB's claims for a declaratory judgment

that it has a current right to operate on the River and that the Ordinance is void.[1]

## SOVEREIGN IMMUNITY

██ The City sought summary judgment on TRB's claims for conversion and interference with prospective business relations on the basis of sovereign immunity. Because sovereign immunity is an affirmative defense, summary judgment on this ground was proper only if the City established the defense as a matter of law. *See Cranford v. City of Pasadena,* 917 S.W.2d 484, 486 (Tex.App.—Houston [14th Dist.] 1996, no writ).

 When a municipality commits a tort while engaged in a proprietary function, it is liable to the same extent as a private entity or individual. *See Dilley v. City of Houston,* 148 Tex. 191, 193, 222 S.W.2d 992, 993 (1949); *Cranford,* 917 S.W.2d at 487. When a municipality commits a tort while engaged in a governmental function, its liability is determined by the provisions of the Texas Tort Claims Act (the Act). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a) (Vernon Supp. 1999); *Cranford,* 917 S.W.2d at 487. Under the Act, a municipality is immune from liability for intentional torts. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.057(2) (Vernon 1997). Therefore, if the City was engaged in a governmental function when it removed TRB's barge from the marina and prohibited TRB from operating on the River, it is immune from liability for conversion and interference with prospective business relations.

Governmental functions are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public. *See id.* § 101.0215(a) (Vernon Supp.1999). Proprietary functions are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality. *See id.* § 101.0215(b) (Vernon 1997). The Act sets out nonexclusive lists of functions that the legislature deems governmental and proprietary. The following are included in the list of governmental functions: parks; reservoirs; regulation of traffic; transportation systems; and recreational facilities, including but not limited to swimming pools, beaches, and marinas. *See id.* § 101.0215(a)(13), (19), (21), (22), (23) (Vernon Supp.1999).

In its motion for summary judgment, the City argued that it was engaged in one or more of the above governmental functions when it removed TRB's barge from the marina and prohibited it from operating on the River. Clearly, the City's removal of TRB's barge from the City-owned marina was a governmental function, since the Act expressly defines the operation of marinas as a governmental function. The summary judgment evidence also indicates that the portion of the River at issue is operated as a park. Thus, the City's actions were encompassed within the functions of operating a marina and a park and of regulating traffic on the River.

TRB does not address the City's argument that its actions were encompassed within one or more of the statutorily defined governmental functions. Instead, TRB argues that the City's actions were proprietary because its motives were pecuniary. TRB relies on the deposition testimony of the official who ordered the barge to be removed from the River.

---

1. It does not, however, dispose of TRB's claims for conversion and interference with prospective business relations. The Ordinance did not exist when the City removed TRB's barge, and the City has not identified any other ordinance, statute, or regulation that authorized its action. Because of our disposition of the City's sovereign immunity defense, *see infra,* we express no opinion on the propriety of that action. We note, however, that the police power does not authorize government officials to make an *ad hoc* determination that a particular activity is detrimental to the public good and then mete out an *ad hoc* punishment. The police power must ordinarily be exercised through properly enacted statutes, ordinances, or regulations. *See* 6A MCQUILLIN, *supra,* § 24.43.

The official was unable to identify any ordinance or statute that TRB was violating by operating its barge; he only knew that TRB's operation of the barge on the River violated the City's contract with Yanaguana. While one might infer from this testimony that the City was motivated to protect its profitable contract with Yanaguana, the City's motives are irrelevant under the Act. Because the City's actions were encompassed within the governmental functions listed in the Act, we have no discretion to declare the actions proprietary, regardless of the City's motives. *See Herschbach v. City of Corpus Christi,* 883 S.W.2d 720, 730 (Tex.App.-Corpus Christi 1994, writ denied); *Mitchell v. City of Dallas,* 855 S.W.2d 741, 744 (Tex. App.—Dallas 1993), *aff'd,* 870 S.W.2d 21 (Tex.1994); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(c) (Vernon 1997) ("The proprietary functions of a municipality do not include those governmental activities listed [in § 101.0215(a) ]."); Christopher D. Jones, Comment, *Texas Municipal Liability: An Examination of the State and Federal Causes of Action,* 40 BAYLOR L.REV. 595, 615 (1988) ("[I]n regard to mixed functions, the rule now seems to be that if any one component of a function is governmental, the entire function will be considered governmental. . . .").

■ TRB also argues that the City is combining with Yanaguana to operate an amusement business. The Act defines "amusements owned and operated by the municipality" as proprietary. TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(b)(2) (Vernon 1997). The City does not own or operate Yanaguana or its barges. Therefore, section 101.0215(b)(2) does not apply.

Because the City was engaged in statutorily defined governmental functions when it removed TRB's barge from the marina and prohibited TRB from operating its barge service on the River, the City is immune from liability on TRB's claims for conversion and interference with prospective business relations. Therefore, the

summary judgment in favor of the City on these claims was proper.

### VALIDITY OF YANAGUANA CONTRACT

■ TRB requests us to declare the contract between the City and Yanaguana void because it violates the City Charter's prohibition on exclusive franchises. *See* SAN ANTONIO, TX., CHARTER § 130. TRB did not request such a declaration in its petition. A claim may not be asserted for the first time on appeal. *See Dreyer v. Greene,* 871 S.W.2d 697, 698 (Tex.1993). TRB's petition did request that enforcement of the contract be enjoined because it violates the constitutional prohibition against monopolies, *see* TEX. CONST. art. I, § 26, but it has abandoned this claim by failing to argue it on appeal. *See Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993).

■ Even if TRB had sought a declaration that the contract violates the City Charter's prohibition on exclusive franchises, it would not be entitled to such a declaration because it failed to join Yanaguana as a party to this suit. As a party to the contract, Yanaguana is an indispensable party to any litigation that seeks to declare the contract void. *See Love v. Moore,* 344 S.W.2d 466, 467 (Tex.Civ. App.—Houston 1961, no writ); *Cook v. Town of Putnam,* 283 S.W. 649, 650 (Tex. Civ.App.—Eastland 1926, writ dism'd w.o.j.).

We also note that we need not determine the validity of the Yanaguana contract in order to resolve the other issues in this appeal. Although the Ordinance requires an entity seeking to operate a commercial barge service on the River to obtain the approval of the City Council, the Ordinance does not expressly provide that approval will only be granted to one entity. We therefore found it unnecessary to determine whether the City may properly grant an exclusive franchise for commercial barge services on the River in order to decide whether the Ordinance is valid. We also determined that the City is im-

**358**

mune from liability for conversion and interference with prospective business relations regardless of whether it acted solely to protect the exclusive franchise contract with Yanaguana. Accordingly, we express no opinion on whether the granting of an exclusive franchise violates the Texas Constitution or the City Charter.

### ATTORNEY'S FEES AND COSTS

■ The City argues that the trial court erred by refusing to award it attorney's fees and costs.

■ A "successful party to a suit shall recover of [its] adversary all costs incurred therein, except where otherwise provided." Rule 131 applies to summary judgment proceedings. *See Maxwell v. Mani,* 892 S.W.2d 146, 156 (Tex.App.-Houston [14th Dist.] 1994), *rev'd on other grounds,* 909 S.W.2d 889 (Tex.1995). A trial court abuses its discretion when it allots costs contrary to the provisions of Rule 131 without including in the record an explanation for the allotment. *See Scholl v. Home Owners Warranty Corp.,* 810 S.W.2d 464, 468 (Tex.App.-San Antonio 1991, no writ). Although the City was the successful party in this case, the trial court refused, without explanation, to award the City its costs. This was an abuse of discretion.

■ A trial court may award attorney's fees "[i]n any proceeding" under the Declaratory Judgment Act. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). A party who wins a declaratory judgment proceeding at summary judgment is eligible for attorney's fees under section 37.009. *See Chandler v. Chandler,* 991 S.W.2d 367, 405–06 (Tex.App.—El Paso 1999, pet. denied). But the party seeking attorney's fees must establish the amount and reasonableness of the fees. *See id.* On appeal, the City has not pointed this court to any summary judgment proof of the amount and reasonableness of its attorney's fees. Therefore, we cannot conclude that the court abused its discretion

in denying the City's request for attorney's fees.

### CONCLUSION

For the reasons stated herein, we affirm the summary judgment granted in the City's favor. We will modify the judgment to award the City its costs in the trial court.