**AFFIRMED and Opinion Filed March 22, 2021**



In The
## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00714-CV

### THE CITY CARROLLTON, TEXAS, Appellant
### V.
### WEIR BROTHERS CONTRACTING, LLC, Appellee

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-02648**

## MEMORANDUM OPINION
Before Justices Molberg, Reichek, and Nowell
Opinion by Justice Reichek

The City of Carrollton, Texas (the "City") appeals the trial court's denial of its plea to the jurisdiction filed in response to claims brought against it by Weir Brothers Contracting, LLC ("Weir"). In four issues, the City generally contends the trial court erred in denying its plea because Weir's claims are based on the City's performance of a governmental function for which there is no statutory waiver of immunity. Because we conclude Weirs's claims are based on the City's performance of a proprietary function, rather than a governmental function, we affirm the trial court's order.

## Backgound

The facts relevant to this appeal are as follows. In 2012, the City published a "Request for Proposal for the Lease or Sale of Approximately 38 Acres of Land at Southwest Corner of Sandy Lake Road and President George Bush Turnpike" (the "RFP"). The RFP stated the City was requesting bids for the lease or purchase of the subject property and set forth items and criteria it would consider when evaluating the bids. The items to be considered included:

(1) The annual lease price or the purchase price;

(2) The experience of the bidder in providing the proposed goods or services;

(3) The extent to which the goods or services meet the municipality's needs;

(4) Demonstrated ability to finance and sustain the operation of the proposed use; and

(5) References from past users/partners in dealing with the bidder for similar uses.

The criteria the City would consider were:

(1) Price;

(2) Intended use of the property;

(3) Full financing of the project in place;

(4) Experience of the bidder operating the same or similar venture elsewhere successfully; and

(5) The degree to which the proposed project would enhance or complement the McInnis Sports Complex.

Each criteria was weighted as "20% of the consideration."

On September 2, 2015, the City executed a lease agreement (the "Lease") with Blue Sky Sports Center of Carrollton, LP ("Blue Sky") under which Blue Sky agreed to lease approximately 30 acres of the property to "operate a multi-use sports, recreational, entertainment, and related service facility." Blue Sky was required to use the leased premises "solely for the purpose of constructing, maintaining, and operating the Facilities." The term "facilities" was defined to include (1) indoor and other soccer fields, (2) clubhouse, offices, and meeting facilities, (3) food and concession stands, (4) restrooms, (5) volleyball facilities, (6) miniature golf and entertainment center, (7) batting cages, and (8) any and all reasonably related activities. In addition, Blue Sky was allowed to enter into sublease agreements for (1) the provision of food and refreshments, (2) a pro shop, (3) an arcade, (4) an agreement for common use of the facilities, (5) off-hour and off-peak programs, and (5) complementary and related businesses. Blue Sky's sublease of a portion of the leasehold estate did not require the City's approval.

The Lease required the facilities to be open to the public "during reasonable times as is customary for [Blue Sky's] type of business." Blue Sky was further permitted to charge fees for use of the facilities. The City was permitted under the Lease to "reasonably use and occupy the Leased Premises up to two times per calendar year with the location of [the City's] use to be determined by [the City] and [Blue Sky]." Blue Sky would have "priority scheduling for its programming at the

–3–

Leased Premises," but the City and Blue Sky would develop a cooperative schedule annually to allow for the City's use.

On July 13, 2016, the City and Arthur James, Inc. ("AJI") entered into a contract for the grading of a 41.94-acre tract of real property that included the 30 acres that had been leased to Blue Sky. As compensation, AJI would receive 6.27 acres of the tract. Sometime later, AJI entered into a subcontract with Weir to perform the grading work in exchange for an interest in the development of the property being transferred to AJI.

Weir began the grading work in February 2017. On or about March 16, 2017, Weir's grading equipment breached a capped landfill. Five days later, the City issued an "Order to Stop All Work" until a remedial action plan could be developed and approved to mitigate the damages to the property.

On June 14, AJI sent the City a draft amendment to their contract pursuant to which AJI offered to escrow $163,000 for the costs of the remediation. The proposed amendment stated that, upon AJI's deposit of the entire escrow amount with the City, the City would lift the stop-work order. The amendment further stated that "City acknowledges that any breach of the cap of the landfill by [AJI] was due to [AJI's] compliance with the Original Grading Plans, which were not prepared by [AJI]." The City did not accept the proposed amendment.

On June 19, the City terminated its agreement with AJI. The stated reason for the termination was that AJI had breached the contract by failing to complete the

grading work within 90 days of the approval of the grading plan. According to the City, the grading plan was approved on November 9, 2016. Approximately two months later, the City hired Tri-Star Construction, Inc., Blue Sky's general contractor, to finish the grading work on the property.

On October 20, Weir submitted an invoice and application for payment to the City in the amount of $728,270 for the grading work it had completed on the property prior to issuance of the stop-work order. The City refused to pay the invoice stating it had terminated its contract with AJI and Weir did not have an agreement with the City to work on the property. Weir then obtained an assignment from AJI of all claims and causes of action AJI had against the City and others relating to the development of the property and brought this suit.

In its petition, Weir asserted claims against the City for breach of contract, quantum meruit, promissory estoppel, and tortious interference with contract. The City filed a plea to the jurisdiction asserting that it had governmental immunity barring Weir's claims for quantum meruit, promissory estoppel, and tortious interference. Weir responded that the City was not immune from suit for actions committed in the performance of a proprietary, rather than governmental, function. The trial court denied the City's plea to the jurisdiction, and the City brought this interlocutory appeal.

**Analysis**

A plea to the jurisdiction is a dilatory plea by which a party challenges the trial court's jurisdiction to determine the subject matter of the action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2006). The purpose of the plea is to defeat a claim without regard to whether it has merit. *Id*. We review a trial court's order denying a jurisdictional plea based on governmental immunity de novo. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). In performing our de novo review, we consider only the pleadings and evidence pertinent to the jurisdictional inquiry. *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). The plaintiff has the burden to allege facts that affirmatively demonstrate the trial court has subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

Municipal corporations, such as the City, exercise their broad powers through two different roles: governmental and proprietary. *Wasson Interests, Ltd. v. City of Jacksonville* ("*Wasson II*"), 559 S.W.3d 142, 146 (Tex. 2018). Immunity protects municipalities from suit based on the performance of a governmental function unless there is an express statutory waiver of immunity. *Id*.; *IT-Davy*, 74 S.W.3d at 853. In contrast, when a municipality performs a proprietary function, it is subject to the same duties and liabilities as those incurred by private persons and corporations. *Wasson II*, 559 S.W.3d at 146.

Governmental functions are enjoined on a municipality by law and are given to it by the state, as part of the state's sovereignty, to be exercised in the interest of the general public. *Wasson Interests, Ltd. v. City of Jacksonville ("Wasson I")*, 489 S.W.3d 427, 439 (Tex. 2016). Proprietary functions are functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality. *Id.* Such functions are usually activities that can be, and often are, provided by private persons. *Wasson II*, 559 S.W.3d at 147.

Section 101.0215 of the Texas Civil Practice and Remedies Code contains non-exclusive lists of thirty-six governmental functions and three proprietary functions. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215. If a function is designated in section 101.0215 as governmental, we have no discretion to determine that it is proprietary. *See City of Houston v. Downstream Envtl., L.L.C.*, 444 S.W.3d 24, 33 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). If a function is not designated as either governmental or proprietary, we apply the section's general definitions to determine the nature of the activity. *Wasson II*, 559 S.W.3d at 150.

The actions forming the basis of Weir's claims against the City involve the City's lease of property and its attendant contracts for preparation of that property for the tenant's use. Leasing property is not a function enumerated as either governmental or proprietary in section 101.0215. *Id.* The City attempts to characterize its lease as an enumerated governmental function based on Blue Sky's use of the property to build and operate a recreational facility. Recreational facilities

are among the governmental functions listed in section 101.0215. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(23).

The fundamental flaw in the City's argument is that Blue Sky's construction and operation of a recreational facility is not a function of the City. Nor is it a function performed by Blue Sky on the City's behalf. The right to operate, manage, and control the sports complex belongs entirely to Blue Sky. The City has only a limited ability to use the facility twice a year. Although open to the general public, as most private businesses are, Blue Sky's operation of the sports complex is not "in the interest of the general public," but in its own interest as a private business venture. *Cf. River Road Neighborhood Ass'n v. S. Tex. Sports*, 720 S.W.2d 551, 560 (Tex. App.—San Antonio 1986, writ dism'd) (school district's lease of stadium to private company while retaining only limited ability to use stadium was invalid because stadium property was no longer being held for public purposes).

Relying on *City of San Antonio v. Butler*, 131 S.W.3d 170 (Tex. App.—San Antonio 2004, pet. denied), the City argues that all activities associated with the operation of one of the governmental functions listed in section 101.0215(a), even those activities that would otherwise be considered proprietary, are governmental in nature. *Id*. at 177. But the Texas Supreme Court has specifically rejected this argument, stating that "a city's proprietary action may be treated as governmental only if it is essential to the city's governmental actions." *Wasson II*, 559 S.W.3d at 153. To be considered governmental, therefore, the City's proprietary action must

be essential to *the City's* performance of a governmental function. *Id.* As stated above, the operation and management of the Blue Sky sports complex is not the City's function; it is solely Blue Sky's. *See River Road*, 720 S.W.2d at 560.

The City next argues that "actions involving private companies can be considered governmental functions." In support of this argument, the City relies on *Texas River Barges v. City of San Antonio*, 21 S.W.3d 347 (Tex. App.—San Antonio 2000, no pet.). The City's reliance is misplaced. The reasoning in *Texas River Barges* supports the conclusion that the City's immunity cannot be based on Blue Sky's activities.

In *Texas River Barges*, the city removed a barge from a city-owned and operated marina. *Id.* at 351. When the barge owner sued, the city asserted governmental immunity. *Id.* at 356. The plaintiff contended the city's actions should be considered proprietary because removal of its barge was motivated by the city's desire to protect its barge operation contract with a different vendor. *Id.* at 357. The plaintiff argued the city and the competing vendor were "combining . . . to operate an amusement business." *Id.* "Amusements owned and operated by the municipality" are defined as a proprietary function under section 101.0215. Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(b)(2).

In concluding the city was immune, the court refused to attribute to the city the ownership and operation of the barge company with which the city had contracted. *Texas River Barges*, 21 S.W.3d at 357. The court concluded instead that

–9–

the city's action in removing the plaintiff's barge was encompassed within the specifically designated governmental functions of operating a marina and a park and regulating traffic on the river. *Id.* Just as the function of the private vendor with whom the city contracted in *Texas River Barges* was not attributable to the city for the purpose of determining whether the city was engaged in a proprietary function, we will not attribute Blue Sky's function of operating a sport's complex to the City for purpose of determining whether the City's actions were governmental in nature.

The City also relies on *Elizabeth Benavides Elite Aviation, Inc. v. City of Laredo*, No. 04-19-00717-CV, 2020 WL 2044678 (Tex. App.—San Antonio Apr. 29, 2020, no pet.) (mem. op.) to support its position. In *Benavides*, the city leased a tract of land at its airport to the plaintiff for the purpose of storing and dispensing aviation fuels for fueling aircraft. *Id.* at *1. Under the terms of the lease, the plaintiff agreed to construct a concrete fuel containment pad for the installation of aboveground fuel storage tanks. *Id.* The plaintiff later sued the city for breach of contract. *Id.* The court concluded the lease was part of the city's operation of its airport, which is an enumerated governmental function under section 101.0215(a). *Id.* at *3.

*Benavides* stands for the proposition that a city may, as part of its operation and management of a designated governmental function, contract with private

parties for the provision of goods or services necessary to that function.[1]  The City cites no authority, however, and we have found none, in which a City has been found to have been engaged in a governmental function despite the fact that it had no ownership, management, or control of the governmental function at issue.  We conclude the City's activity in this case was not the construction and operation of a recreational facility, but only the lease of land and attendant grading of the property. Because neither leasing nor grading property is listed as a governmental or proprietary function in section 101.0215, the general definitions of those functions control our determination of the capacity in which the City was acting when it engaged in the conduct at issue.

The City makes no argument in its brief on appeal that its actions would fall under the general definition of a governmental function.[2]  Furthermore, the record shows that the City's decision to lease the land was a discretionary act conducted on its own behalf primarily for the benefit its residents.  When the City requested bids to lease or sell the property at issue, the City specifically stated it would consider the

---

[1] The City notes in its brief that a portion of the grading contract it signed with AJI was for the grading of a practice field located in McInnish Park, which is owned and operated by the City.  A contract for the maintenance and improvement of playing fields in a city owned, operated, and controlled park is a governmental function.  *City of McKinney v. KLA Int'l Sports Mgmt., LLC*, No. 05-20-00659-CV, 2021 WL 389096, *3 (Tex. App.—Dallas Feb. 4, 2021, no pet. h.) (mem. op.).  But the City does not explain how, or even if, the grading of the McInnish Park practice field forms any part of the claims asserted by Weir in this case.

[2] The City makes some reference to the general definitions in a post-submission letter brief.  We will not consider issues raised for the first time in a post-submission letter when they have not been first presented in the party's brief.  *See Broderick v. Universal Health Servs., Inc.*, No. 05-16-01379-CV, 2018 WL 1835689, at *4 n.6 (Tex. App.—Dallas Apr. 18, 2018, no pet.) (mem. op.); *Smith v. Dass, Inc.*, 283 S.W.3d 537, 543 n.4 (Tex. App.—Dallas 2009, no pet.).

–11–

extent to which the goods or services provided by the bidder would meet the *municipality's* needs. Although the extent to which the bidder's use of the property would "complement" a nearby public recreational facility was also a consideration, nothing in the record suggests the lease with Blue Sky was essential to the City's operation of that public facility so as to render the act governmental. Accordingly, we conclude the City's actions were proprietary in nature. *See Wasson II*, 559 S.W.3d at 150; *City of League City v. Jimmy Changas Inc.*, No. 14-19-00776-CV, 2021 WL 629618, at *5–6 (Tex. App.—Houston [14th Dist.] Feb. 18, 2021, no pet. h.). Because governmental immunity does not apply to claims arising from a city's proprietary acts, the trial court did not err in denying the City's plea to the jurisdiction.

We affirm the trial court's order.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

200714F.P05

–12–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THE CITY CARROLLTON,
TEXAS, Appellant

No. 05-20-00714-CV      V.

WEIR BROTHERS
CONTRACTING, LLC, Appellee

On Appeal from the 162nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-02648.
Opinion delivered by Justice
Reichek. Justices Molberg and
Nowell participating.

      In accordance with this Court's opinion of this date, the order of the trial court denying the plea to the jurisdiction filed by THE CITY CARROLLTON, TEXAS is **AFFIRMED**.

      It is **ORDERED** that appellee WEIR BROTHERS CONTRACTING, LLC recover its costs of this appeal from appellant THE CITY CARROLLTON, TEXAS.


Judgment entered March 22, 2021