COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MICHAEL JANGL, | § | No. 08-19-00253-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Court at Law Number Two |
| THE STATE OF TEXAS, | § | |
| | | of Hays County, Texas |
| Appellee. | § | |
| | | (TC# 19-1183CR) |
| | § | |

## **O P I N I O N**

Appellant Michael Jangl was cited for blocking the spillway of the Rio Vista Dam on the San Marcos River in violation of an ordinance prohibiting stopping, standing, or interfering with others passing through the spillway. San Marcos, Tex., San Marcos City Code subpt. A, § 58.071 (2021). Following a bench trial in Municipal Court, Jangl was found guilty of a Class C misdemeanor and fined $400 plus $71 in court costs. After having been found to have abandoned his appeal to the County Court at Law, Jangl now appeals to this Court.[1] We will affirm the judgment of conviction.

---

[1] Jangl's appeal, filed in the Texas Third Court of Appeals, was transferred under the Texas Supreme Court's Docket Equalization Program to the Texas Eighth Court of Appeals. We follow Third Court of Appeals precedent to the extent it conflicts with our own. *See* TEX.R.APP.P. 41.3.

**BACKGROUND**

Mr. Jangl is a devotee of "bodyboarding" on the spillway at Rio Vista Falls on the San Marcos River. He testified at trial that "it is by no means a stretch to proclaim that the exercise of bodyboarding at Rio Vista Falls was and is absolutely the most essential component of" the self-prescribed lifestyle he deems necessary for the treatment of his gastrointestinal state. In just the year leading up to the citation at issue here, Jangl bodyboarded the falls from five to seven days a week, sometimes twice a day, year-round, despite warnings from park rangers that it was a violation of law to do so. On June 23, 2018, park rangers finally moved beyond warnings and cited Jangl for violating the law. Jangl continued bodyboarding, even after the citation, up until the time of trial and possibly beyond.

Unfortunately for Jangl, the Rio Vista spillway where he chooses to bodyboard is also the sole passage for the countless people pursuing the pastime of "tubing" the San Marcos river. The park ranger testified that Jangl's bodyboarding on the spillway blocks these tubers and presents a risk of injury. The park ranger testified that it is a frequent problem when people block the spillway, as it is a dangerous spot, and there have been many instances where people have bumped their heads or otherwise gotten injured, with some even having to be transported by emergency medical services. Jangl admitted at trial that he has occasionally collided with tubers and in his appellate brief describes the "self-evident, clear, and present" danger at Rio Vista Falls. In fact, Jangl testified he wears a helmet when he bodyboards because "I can smash my head, which I have. I've broken my nose halfway on the rocks, other surrounding rocks. And if I was to hit my head, I could kill myself."

**DISCUSSION**

2

Jangl does not deny violating the ordinance, and in fact admits to continuing the conduct for which he was cited despite warnings before and even beyond the date he was cited for blocking the spillway. Nor does he seem to challenge the notion that the spillway presents a dangerous condition worthy of rules governing its safety. Instead, he seems to challenge the municipal ordinance on an unspecific multitude of fronts.

Jangle represents himself on appeal, and his fifty-five-page brief ranges from a recounting of what he describes as the "self-evident, clear, and present danger" at Rio Vista Falls to a discussion of navigational rules on US Waters to an analysis of the importance of the water recreation economy. He argues, but does not provide evidence in the record, that his bodyboard is a vessel under US Coast Guard rules and that the San Marcos River is a navigable waterway, alluding to arguments about federal preemption and whether the city has the authority to regulate navigation under various sections of the US Code. According to Jangl, "[t]his legal cause may indeed serve as a case study for the entirety of the United States of America in regard to the economic, cultural, and legal security of the country's future in relation to the national mounting legal issue of intergovernmental regulation of navigable operations, both public and private, upon the navigable waterways of the USA." Missing from Jangl's filings, however, is a clear or concise statement of the legal basis for his challenge to the citation issued by the municipal court, or the ordinance under which he was cited, and facts to support such a challenge.

Although we are sympathetic to the difficulties faced by *pro se* litigants, we must hold them to the same standards as those represented by counsel. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *see also Stewart v. Texas Health & Human Servs. Comm'n*, No. 03–09–00226–CV, 2010 WL 5019285, at *1 n.1, *2 (Tex.App.—Austin Dec. 9, 2010, no

pet.)(mem. op.). That said, we are also instructed to liberally construe briefs and strive to reach the merits of a case whenever possible, *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 221–22 (Tex. 2017). Accordingly, we will address Jangl's issues as best we can, to the extent we are able to divine his arguments. *See Forbes v. Forbes*, Nos. 03–15–00130–CV, 03-15-00337-CV, 2016 WL 612175, at *4 (Tex.App.—Austin Feb. 12, 2016, no pet.)(mem. op.)(citing *Stewart*, 2010 WL 5019285, at *1 n.1)(addressing *pro se* issues "as best we can" in the interest of justice).[2]

Making sense of Jangl's briefing as best we can, his appeal appears to boil down to a challenge to the validity of the municipal ordinance[3] under which he was cited, either because the ordinance is preempted by federal and state laws regarding vessels traveling navigable waterways or because the City somehow lacks authority to enforce the regulation at issue. Jangl has not established in the record the facts to support an argument challenging the ordinance based on federal law regarding vessels traveling navigable waterways. Nevertheless, we decide his appeal assuming without deciding that Jangl's bodyboard constitutes a "vessel" and that the San Marcos

---

[2] Jangl's briefing also seems to seek injunctive and declaratory relief directing this Court or the State and/or the City of San Marcos to issue warnings to the public and make physical modifications consistent with Jangl's many opinions regarding the dangers at Rio Vista Falls. Any such requests are inappropriately lodged in this appeal, lack merit, and are denied.

[3] The ordinance in relevant part provides as follows:

> Municipal Ordinance Sec.58.071. Activities on Dams.
>
> (a) It is unlawful for a person to stop or stand in the spillway at Rio Vista Falls or interfere with another person passing through any spillway;
>
> .        .        .
>
> (c) An offense under this section is punishable by a fine not to exceed $500.00 as provided in section 1.015(b) of the San Marcos City Code.

San Marcos, Tex., San Marcos City Code subpt. A, § 58.071 (2021).

River is a navigable waterway.

## Preemption

To the extent Jangl challenges the San Marcos ordinance as being preempted by federal and/or state law governing navigable waters, his argument fails. Regarding federal preemption, it is well established that states may exert their police power over navigable waters within their boundaries. *Grand Canyon Dories, Inc. v. Idaho Outfitters & Guides Bd.*, 709 F.2d 1250, 1254 (9th Cir. 1983); *Chicago R.I. & G. Ry. Co. v. Tarrant County Water Control & Improvement Dist., No. 1*, 123 Tex. 432, 452, 73 S.W.2d 55, 66-67 (1934). More specifically, federal courts have held that the regulation of white-water rafting activities is not an area that inherently requires national uniformity. *See Grand Canyon Dories, Inc.*, 709 F.2d at 1254; *see also Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 179 (1978); *Kelly v. State of Washington ex rel Fass Co.*, 302 U.S. 1, 14-15 (1937). None of the federal statutes referenced in Jangl's briefing directly conflict with the ordinance at issue here, nor do they evince a clear and manifest congressional intent to preempt the state's ability to regulate safety on its waterways. As such, the San Marcos ordinance is not preempted by federal law.

To the extent Jangl asserts that the San Marcos ordinance is preempted or trumped by state law, he fares no better. San Marcos is a home rule city. As such, it derives its powers not from the legislature, but from the Texas Constitution. *See* TEX.CONST. art. XI, § 5; *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998). Home-rule cities "possess the full power of self government and look to the Legislature not for grants of power, but only for limitations on their power." *Dallas Merch.'s & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490-91 (Tex. 1993). If the legislature chooses to preempt a subject usually encompassed within the broad powers of a home-

rule city, its intent to do so must appear with "unmistakable clarity." *Proctor*, 972 S.W.2d at 733. The state has not done so here. In fact, Texas state law likewise prohibits the blocking of highways and waterways - a regulation consistent with the ordinance at issue here. *See* TEX.PENAL CODE ANN. § 42.03 - Obstructing Highway or Other Passageway, Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974. Amended by Acts 1993, 73rd Leg., ch. 900, § 1.01, eff. Sept. 1, 1994. As such, the challenged ordinance is not preempted by state law.

### Challenge to City's authority for ordinance

To the extent Jangl argues more generally that the City does not have the authority to enact or enforce the ordinance, this case is instructed by a case from our sister court in San Antonio, *Texas River Barges v. City of San Antonio*, 21 S.W.3d 347 (Tex.App.—San Antonio 2000, pet. denied). The San Antonio court expressly upheld a city's authority to regulate activities on the river within its jurisdiction. Acknowledging that the San Antonio River is a navigable stream which may be used and enjoyed by the public, the court nevertheless held that the City has authority under its police powers to regulate navigation on the river to "prevent endangering the public and jeopardizing the River's distinctive and sedate character." *Id.* at 350.

The San Marcos ordinance at issue here, less restrictive than the ordinances at issue in *Texas River Barges*, is likewise a valid exercise of the City's police power. The City of San Marcos' ordinance is clearly a safety measure, specifically regarding the situation at Rio Vista Falls. An ordinance is a valid exercise of a city's police power if the regulation was adopted to accomplish a legitimate goal, that is, it has a "substantial relationship" to the protection of the public's general health, safety, or welfare. *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 793 (Tex. 1982). While there are cases where city ordinances have been argued to stretch the police

6

power beyond these legitimate goals, the ordinance at issue here is not such a case, as it clearly seeks to promote public safety by protecting users of the San Marcos River from a danger at Rio Vista Falls.

As a home-rule city, San Marcos has the inherent authority to enact reasonable regulations that promote the public welfare so long as they are not contrary to the constitution or laws of the United States or the State of Texas. The Ordinance here challenged bears a substantial relationship to the public health, safety, and general welfare, and it is not contrary to federal or state law. As such it is a reasonable exercise of the City's authority.

**Conclusion**

Having overruled Appellant's challenges to the ordinance under which he was cited, we affirm the judgment of the trial court.

June 14, 2021

Jeff Rose, Former Chief Justice, Third Court of Appeals

Before Palafox, J., Alley, J., and Rose, Former Chief Justice
Rose, Former Chief Justice (Sitting by Assignment)

(Do Not Publish)